UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA FOR                    CIVIL ACTION
THE USE AND BENEFIT OF REGIONAL
LOCAL UNION NO. 846,
INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL, ORNAMENTAL
AND REINFORCING IRON WORKERS,
AFL-CIO, et al.,

VERSUS                                          NO: 12-1918

BOH BROS. CONSTRUCTION CO.,                     SECTION: R
L.L.C., et al.,

## ORDER AND REASONS

Plaintiffs, Regional Local Union No. 486, International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO ("Regional Local Union"); Regional District Council Welfare Plan and Trust ("Welfare Plan"); Regional District Council Retirement Plan and Trust ("Retirement Plan"); Regional District Council Training Trust ("Training Trust"); and Regional District Council Vacation Trust Fund("Vacation Trust") (referred to collectively as "Use Plaintiffs"), have filed this motion for summary judgment against defendants Boh Brothers Construction Company, L.L.C. ("Boh"), Fidelity and Deposit Company of Maryland ("Fidelity"), and Zurich American Insurance Company ("Zurich").  For the following reasons, the Court GRANTS Use Plaintiffs' motion and orders the defendants to pay Use Plaintiffs $30,233.69 in delinquent contributions, plus

pre-judgment interest at the rate of 1.5% per month, as well as costs and attorney's fees.

**I. BACKGROUND**

In August 2010, defendant Boh entered into a prime contract with the U.S. Army Corps of Engineers to perform construction work on the Causeway Bridge in Jefferson Parish.[1]  The value of the contract exceeded $100,000.[2]  Under 40 U.S.C. § 3131, commonly known as the Miller Act, contractors must obtain a payment bond for contracts with a value of more than $100,000 for construction of public buildings or works.  40 U.S.C. § 3131(b)(2).  Boh obtained a payment bond with defendants Fidelity and Zurich as sureties.[3]  The stated liability limit of the bond is $16,093,000.00.[4]  Boh then subcontracted a portion of the work to defendant QPL.[5]

QPL is a signatory to a Collective Bargaining Agreement with Plaintiff Regional Local Union.[6]  The Agreement requires QPL to file reports of hours worked by its employees and to pay contributions at specified rates to the Union and to the Welfare

---

[1] R. Doc. 49-1 at 2.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] R. Doc. 47-7.

Trust, Retirement Trust, Training Trust, and Vacation Trust for each hour worked by each employee covered by the Agreement.[7] Under the Agreement, interest is due on delinquent contributions at a rate of 1.5% per month.  The Agreement also provides that QPL will be liable for accounting fees, attorney's fees, auditing fees and expert fees in the event of litigation to recover delinquent contributions.[8]

Between April 23, 2011, and June 30, 2012, QPL performed work on the Project but failed to report the hours worked by each employee to the Regional Local Union and failed to pay contributions to the fringe benefit funds.[9]  QPL did submit Certified Payroll records to Boh on a weekly basis.[10]  Each Certified Payroll document lists the number of hours each QPL employee worked on the Project for that week.[11]  On each document, QPL certifies that the record is "correct and complete" and that "payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees."[12]  Each Certified Payroll document bears the

---

[7] *Id.*

[8] *Id.*

[9] R. Doc. 1 at 21.

[10] R. Docs. 47-5 and 47-6.

[11] *Id.*

[12] *Id.*

signature of the QPL President.  Based on those records and the contribution rates specified in the Agreement, QPL owed $30,233.69 in fringe benefit contributions to Use Plaintiffs.[13]

In August 2011, while QPL's work on the project was still ongoing, Use Plaintiffs provided Boh with notice of their claim for payment by certified mail.[14]  Fidelity and Zurich were copied on this notice.  The notice included a demand for payment of all amounts due, stated with substantial accuracy, as required by 40 U.S.C. § 3133(b)(2).[15]  Plaintiffs updated the amount of their claim as additional amounts came due.[16]

On July 24, 2012, Use Plaintiffs sued QPL, Boh, Fidelity and Zurich, seeking to recover the delinquent contributions, interest, costs, and attorney's fees under the Miller Act.[17]  Use Plaintiffs also claimed entitlement to damages under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2)(C), which entitles a fiduciary who prevails in an action to recover delinquent contributions to damages equal to the interest on the unpaid contributions, or up to 20% of the

---

[13] R. Doc. 47-2 at 4.

[14] R. Doc. 49-1 at 6-7.

[15] *Id.*

[16] R. Doc. 47-2 at 4.

[17] R. Doc. 1.

unpaid contributions, whichever is greater.[18]  On August 22, 2013, this Court entered a default judgment against QPL in the amount of $40,933.51, representing the $30,233.69 in unpaid contributions and accrued interest up to August 1, 2013.[19]  The Court also awarded Use Plaintiffs costs and attorney's fees associated with this matter with leave to file additional proof of attorney's fees and costs.[20]  QPL has not paid this sum to Use Plaintiffs.  Use Plaintiffs now move for summary judgment against the remaining defendants, seeking to hold them liable under the Miller Act for QPL's unpaid contributions, interest, costs, attorney's fees, and ERISA damages.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*

---

[18] *Id.*

[19] R. Doc. 41.

[20] *Id.*

5

*Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence that would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991)(citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

6

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.

The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *Id*. at 325. *See also Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'") (citing *Celotex*, 477 U.S. at 332).

## III. DISCUSSION

The Miller Act requires general contractors on federal construction projects worth over $100,000 to furnish a bond to secure payment to all suppliers of labor and materials.  40 U.S.C. § 3131(b); *J.D. Fields & Co., Inc. v. Gottfried Corp.*, 272 F.3d 692, 696 (5th Cir. 2001).  The Act also permits employees of subcontractors to recover from the general contractor's payment bond any unpaid amount due from the subcontractor.  40 U.S.C. § 3133(b)(2); *J.D. Fields*, 272 F.3d at 696.  Specifically, the Act provides:

> A person having a direct contractual relationship with a
> subcontractor but no contractual relationship, express or
> implied, with the contractor furnishing the payment bond may
> bring a civil action on the payment bond on giving written
> notice to the contractor within 90 days from the date on
> which the person did or performed the last of the labor or
> furnished or supplied the last of the material for which the
> claim is made. The action must state with substantial

7

accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

40 U.S.C. § 3133.

Defendants in this action do not dispute QPL's failure to make contributions to the fringe benefit funds as required by the Collective Bargaining Agreement.  Nor do they dispute that Use Plaintiffs provided timely notice of their claim to the contributions.  Instead, they argue that Use Plaintiffs are not entitled to recover under the Act because they did not furnish labor or material in connection with the Project.  This argument is without merit.  In *United States ex rel. Sherman v. Carter*, 353 U.S. 210 (1957), the Court permitted trustees of an employee health and welfare fund to recover delinquent contributions from a contractor who was obligated to contribute to the fund pursuant to a collective bargaining agreement.  Noting that the Act does not limit recovery on the bond to wages owed to employees, the Court determined that the unpaid contributions were a part of the compensation for the employees' work and were recoverable as such.  *Id*. at 217-18.  The Court then held that the trustees of the employees' fund had the right to sue on the bond on their behalf.  *Id.* at 220.

Defendants argue that *United States ex rel. Sherman* does not control because in that case, it was the contractor–not the subcontractor–who failed to make contributions in accordance with

an agreement to which it was a party.  But the Court recognized that the surety's obligations also extended to subcontractor employees who lacked a contractual relationship with the defendant.  *See id.* at 218 ("[P]ersons who contributed labor and material to Carter's subcontractors were entitled to the Act's protection.")  Since the Court's holding in *United States ex rel. Sherman*, the Fifth Circuit has recognized that "there appears to be no statutory basis for distinguishing between the recovery allowed to the supplier of a subcontractor and that of a person dealing directly with the general contractor."  *United States ex rel. Carter Equip. Co. v. H. R. Morgan, Inc.*, 554 F.2d 164, 165-66 (5th Cir. 1977); *see also Gergora v. R. L. Lapp Forming, Inc.*, 619 F.2d 387, 391 (5th Cir. 1980) (looking to the Miller Act to construe Florida statute modeled after the Act and permitting trustees of benefit funds to recover from general contractor on behalf of subcontractor's employees).

The Certified Payroll submitted by QPL establishes that its employees worked 9,724.5 hours on the Project between the weeks ending on April 23, 2011 and June 30, 2012.[21]  QPL paid $196,071.35 in wages between these dates.[22]  Based upon the applicable fringe benefit contribution rates for the various benefit funds, QPL should have paid $30,233.69 in contributions

---

[21] R. Doc. 47-8.

[22] *Id.*

to the Plaintiffs over this period.[23]  Accordingly, the Court
holds that Use Plaintiffs are entitled to recover unpaid
contributions in the amount of $30,233.69.

Use Plaintiffs also seek to recover interest on the unpaid
contributions, as well as attorney's fees and costs associated
with this litigation.  The Agreement required QPL to pay
contributions to the Plaintiffs by the fifteenth day of the month
following the month in which the work was performed and provides
for 1.5% interest in the event of delinquency.[24]  It also
provides that QPL will be liable for accounting fees, attorney's
fees, auditing fees and expert fees in the event of litigation to
recover delinquent contributions.[25]  In *United States ex rel.
Sherman*, the Supreme Court permitted the trustees to recover
costs and attorney's fees because the defendant's obligation to
pay those items was set forth in the trust agreement.  The Court
noted that "[i]f the employees are to be 'paid in full' the 'sums
justly due' to them" as the Act intended, "these items must be
included."  *United States ex rel. Sherman*, 353 U.S. at 220.
Following suit, the Fifth Circuit has held that when a provision
for the recovery of attorney's fees is contained in a contract
between the employees and the subcontractor, the employees or

---

[23] R. Doc. 47-2 at 4.

[24] R. Doc. 47-7 at 9.

[25] *Id.*

10

their trustees may recover those fees from the general contractor
in a suit brought under the Act.  *United States ex rel. Carter
Equip. Co.*, 554 F.2d at 165-66.  *See also Gergora*, 619 F.2d at
391 ("Compensation for attorneys fees is part of the
consideration given in return for the laborers' services and is
insured by the surety's promise to pay all persons supplying
labor.") (citations omitted).

    In the Fifth Circuit, prejudgment interest in Miller Act
cases is a question of federal law.  *United States ex rel. Canion
v. Randall & Blake*, 817 F.2d 1188, 1193 (5th Cir. 1987).  Because
the Miller Act is silent on the issue, however, state law is an
appropriate source of guidance.  *Id.*  Defendants have not argued
that the contract provision permitting the recovery of
prejudgment interest is contrary to the laws of the state that
govern the contract.  Absent such a conflict, prejudgment
interest is recoverable.  *See Canion*, 817 F.2d at 1193 (remanding
to determine whether prejudgment interest award conflicted with
state law).  *See also United States ex rel. Maddux Supply Co. v.
St. Paul Fire & Marine Ins. Co.*, 86 F.3d 332, 336 (4th Cir. 1996)
(holding that interest and attorney's fees are recoverable if
they are part of the contract between the subcontractor and
supplier) (collecting cases).

    The Court holds that Use Plaintiffs are entitled to recover
interest from the remaining defendants at the rate specified in

11

the Agreement.  The interest that accrued between the date of each month's delinquency and this Court's order granting default judgment against QPL totaled $10,699.82.  Use Plaintiffs have now updated that amount to $13,184.32, which represents the interest that will accrue through December 1, 2013.  The Court orders the parties to determine the appropriate amount of interest through the date of this order.

Finally, Use Plaintiffs seek to recover statutory damages equal to the amount of unpaid interest.  Unlike the award of attorney's fees and interest, these damages were not provided for in the Agreement.  Rather, Use Plaintiffs look to 29 U.S.C. § 1132(g)(2)(C), which permits a fiduciary who brings an ERISA action on behalf of an employee benefit plan to recover an amount equal to the greater of interest on the unpaid contributions or liquidated damages of up to 20% of the unpaid contributions.  In this action, interest on the unpaid contributions will exceed 20% of the unpaid principal.

Use Plaintiffs are not entitled to recover this sum.  Unlike the fringe benefit contributions, interest, and attorney's fees, which were provided for in the Agreement and formed "part of the compensation for the work to be done by [the] employees," *United States ex rel. Sherman*, 353 U.S. at 218, ERISA damages are not part of the employees' compensation.  Rather, they are a statutory penalty imposed on the employer for failure to comply

with the Agreement.  Moreover, the damages provision limits recovery to "any action [brought] under this subchapter."  29 U.S.C. § 1132(g)(2).  Use Plaintiffs have not briefed the issue of whether they are entitled to recover ERISA damages from  a general contractor under the Miller Act, and the Court is not aware of any authority permitting such a recovery.  Accordingly, their request for additional interest is denied.

**IV. CONCLUSION**

For the foregoing reasons, Use Plaintiffs' motion for summary judgment is GRANTED. Defendants are ordered to pay Use Plaintiffs $30,233.69 in delinquent contributions, plus prejudgment interest at the rate of 1.5%.  Use Plaintiffs also are awarded attorney's fees and costs associated with this matter.  The parties have until November 15, 2013 to submit a stipulation to the fees and costs to be included in the final judgment or to file a motion for attorney's fees demonstrating the sum to which Use Plaintiffs are entitled. The request for additional interest under 29 U.S.C. § 1132(g)(2) is denied.

New Orleans, Louisiana, this   17th   day of October, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

13