```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF REGIONAL LOCAL UNION NO. 846, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL AND REINFORCING IRON WORKERS, AFL-CIO, et al., | CIVIL ACTION |
| VERSUS | NO: 12-1918 |
| BOH BROS. CONSTRUCTION CO., L.L.C., et al., | SECTION: R |

## DEFAULT JUDGMENT AGAINST DEFENDANT QPL, INC.

Defendant Boh Brothers Construction Company, Inc. ("Boh") moves the Court to enter a default judgment against defendant in cross-claim QPL, Inc. ("QPL") in an amount equal to Boh's liability to Use Plaintiffs in this action, plus attorney's fees and costs associated with this matter.  Because Boh presents evidence that QPL failed to answer or otherwise respond to the petition, the Court GRANTS Boh's motion without an evidentiary hearing.  The Court hereby orders QPL to indemnify Boh in the amount awarded to Use Plaintiffs in this action.  The Court also orders QPL to pay Boh's reasonable expenses, costs, and attorney's fees incurred as a result of this action.

## I. BACKGROUND

### A. Factual Background

In August 2010, defendant Boh entered into a prime contract with the U.S. Army Corps of Engineers ("USACE") to perform construction work on the Causeway Bridge in Jefferson Parish.[1] The value of the contract exceeded $100,000.[2] Under 40 U.S.C. § 3131, commonly known as the Miller Act, contractors must obtain a payment bond for contracts with a value of more than $100,000 for construction of public buildings or works. 40 U.S.C. § 3131(b)(2). Boh obtained a payment bond with defendants Fidelity Deposit Company of Maryland and Zurich American Insurance Company as sureties.[3] The stated liability limit of the bond is $16,093,000.00.[4] Boh then subcontracted a portion of the work to defendant QPL.[5]

QPL is a signatory to a Collective Bargaining Agreement with Plaintiff Regional Local Union No. 846.[6] The Agreement requires QPL to file reports of hours worked by its employees and to pay contributions at specified rates to the Union and to the Welfare

---

[1] R. Doc. 49-1 at 2.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] R. Doc. 47-7.

Trust, Retirement Trust, Training Trust, and Vacation Trust for each hour worked by each employee covered by the Agreement.[7] Under the Agreement, interest is due on delinquent contributions at a rate of 1.5% per month.  The Agreement also provides that QPL will be liable for accounting fees, attorney's fees, auditing fees and expert fees in the event of litigation to recover delinquent contributions.[8]

Between April 23, 2011, and June 30, 2012, QPL performed work on the Project but failed to report the hours worked by each employee to the Regional Local Union and failed to pay contributions to the fringe benefit funds.[9]  QPL did submit Certified Payroll records to Boh on a weekly basis.[10]  Each Certified Payroll document lists the number of hours each QPL employee worked on the Project for that week.[11]  On each document, QPL certifies that the record is "correct and complete" and that "payments of fringe benefits as listed in the contract have been or will be made to appropriate programs for the benefit of such employees."[12]  Each Certified Payroll document bears the

---

[7] *Id.*

[8] *Id.*

[9] R. Doc. 1 at 21.

[10] R. Docs. 47-5 and 47-6.

[11] *Id.*

[12] *Id.*

signature of the QPL President.  Based on those records and the contribution rates specified in the Agreement, QPL owed $30,233.69 in fringe benefit contributions to Use Plaintiffs.[13]

In August 2011, while QPL's work on the project was still ongoing, Use Plaintiffs provided Boh with notice of their claim for payment by certified mail.[14]  Fidelity and Zurich were copied on this notice.  The notice included a demand for payment of all amounts due, stated with substantial accuracy, as required by 40 U.S.C. § 3133(b)(2).[15]  Plaintiffs updated the amount of their claim as additional amounts came due.[16]

### B. Procedural Background

Plaintiffs initiated this action by filing a complaint against QPL, Boh, Fidelity, and Zurich on July 24, 2012.  Boh filed a cross-claim against QPL on June 21, 2013, seeking indemnity against liability, expenses, fees, and litigation costs.  The record shows that QPL was properly served with a copy of the Summons and Cross-Complaint in this action on or about June 21, 2013.[17]  QPL failed to appear or otherwise plead, and

---

[13] R. Doc. 47-2 at 4.

[14] R. Doc. 49-1 at 6-7.

[15] *Id.*

[16] R. Doc. 47-2 at 4.

[17] R. Doc. 29.

Boh filed a Motion for Entry of Default on August 9, 2013.[18] The Court granted the motion on August 12, 2013.[19]

On August 22, 2013, the Court granted Use Plaintiffs' separate motion for default judgment against QPL in the amount of $40,933.51 in delinquent contributions and interest, plus attorney's fees and costs.  The Court also granted Use Plaintiff's motion for summary judgment against the remaining defendants, including Boh, holding them liable for the full $40,933.51, plus additional accrued interest and Use Plaintiffs' attorney's fees and costs.  In this motion for default judgment, Boh seeks indemnity from QPL for all amounts for which it is liable.  Boh also seeks indemnity for its own attorney's fees and costs.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a default judgment may be entered against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period. Fed.R.Civ.P. 55(b). A plaintiff who seeks a default judgment against an uncooperative defendant must proceed through two steps. First, the plaintiff must petition the court for the entry of default, which is simply "a notation of the

---

[18] R. Doc. 35.

[19] R. Doc. 37.

party's default on the clerk's record of the case." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.,* 782 F.2d 329, 335 (2d Cir. 1986); *see also United States v. Hansen,* 795 F.2d 35, 37 (7th Cir. 1986)(describing the entry of default as "an intermediate, ministerial, nonjudicial, virtually meaningless docket entry"). Before the clerk may enter the defendant's default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed.R.Civ.P. 55(a). Beyond that requirement, however, the entry of default is largely mechanical.

Once the default has been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the request for a default judgment may be directed to the clerk. Fed.R.Civ.P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn,* 236 F.3d 766, 767 (5th Cir. 2001)(per curiam). The disposition of a motion

for the entry of default ultimately rests within the sound jurisdiction of the district court. *Mason v. Lister,* 562 F.2d 343, 345 (5th Cir. 1977).

**III. DISCUSSION**

**A. Jurisdiction**

Before entering judgment, the district court must "look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. V. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001)(quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). The court must refrain from entering judgment if its jurisdiction is uncertain because judgment entered in the absence of jurisdiction is void.

In this case subject matter jurisdiction is founded upon federal question jurisdiction under 28 U.S.C. § 1331. This case arises under the Miller Act, 40 U.S.C. § 3131, et seq., which requires all contractors who are awarded "any contract of more than $100,000 for the construction, alteration, or repair of any public building or work" to furnish a payment bond for the protection of the people who supply labor or materials for the completion of the contract. 40 U.S.C. § 3131. The contract between Boh and the USACE meets these requirements and is subject to the Miller Act. Therefore, the Court finds that it has jurisdiction to enter this default judgment.

**B. Entry of Default Judgment**

The record shows that QPL failed to appear or otherwise plead in response to the cross-complaint filed on July 21, 2013.[20] Although default judgments are generally disfavored, *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), the Court finds that QPL's failure to appear has made it impossible to achieve the "just, speedy, and inexpensive disposition" of this case on the merits. *Sun Bank v. Pelican Homestead & Sav. Assoc.*, 874 F.2d 274, 276 (5th Cir. 1989). Accordingly, the Court will enter default judgment against QPL.

Although a default judgment "conclusively establishes a defendant's liability," it "does not establish the amount of damages." *United States ex rel. M-CO Const., Inc. V. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). A court may, in its discretion, conduct an evidentiary hearing to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B); *James v. Frame*, 6 F.3d 307, 309-10 (5th Cir. 1993). Unliquidated damages usually are not awarded by default judgment without an evidentiary hearing, except where the amount claimed is capable of mathematical calculation. *James*, 6 F.3d at 310. Plaintiffs seek damages that are mathematically calculable. Therefore, no evidentiary hearing is necessary.

---

[20] R. Doc. 35.

Section 9 of the subcontract between Boh Bros. and QPL provides in part:

> Subcontractor shall . . . pay all taxes and contributions imposed or required by law for any employment insurance, pensions, old age retirement funds, or similar purposes, in respect to the work under this contract and the employees of Subcontractor in the performance of said work. Subcontractor shall indemnify Contractor from any costs or liability for noncompliance with the foregoing, . . .[21]

The Collective Bargaining Agreement between QPL and the Union required QPL to make contributions to the various fringe benefit funds at specified hourly rates. QPL was required by law to make the contributions in accordance with the terms of the Agreement. *See* 29 U.S.C. § 1145 (requiring employers who are obligated to contribute to multiemployer plans under the terms of a collective bargaining agreement to make such contributions in accordance with the terms of the agreement). QPL failed to comply with that obligation, and Boh was held liable for the unpaid contributions, interest and attorney's fees as a direct result. According to the terms of the subcontract, QPL is obligated to indemnify Boh for the full amount of its liability.

Section 23 of the subcontract further provides:

> Should Contractor employ an attorney to enforce any of the provisions hereof, or to protect its interest in any matter arising under this contract . . . or to prosecute or defend any suit resulting from this contract, . . . Subcontractor and his surety, jointly and severally, agree to pay Contractor all reasonable costs, charges, and attorney's

---

[21] R. Doc. 48-2 at 5.

9

fees expended or incurred therein.[22]

This action arose out of QPL's failure to make contributions to the fringe benefit funds based on work it assigned to its employees as a result of its contract with Boh. The litigation therefore can be characterized as "resulting from" the contract. Accordingly, QPL is liable for Boh's reasonable costs, charges, and attorney's resulting from this litigation.

**IV. CONCLUSION**

For the foregoing reasons, the motion is GRANTED. Judgment will be entered against QPL in favor of Boh for the delinquent contributions, interest, costs, and attorney's fees awarded to Use Plaintiffs in this action, as well as its attorney's fees and costs associated with this matter. Boh has until October 31, 2013 to file a motion for attorney's fees demonstrating the sum to which it is entitled.

New Orleans, Louisiana, this __17th__ day of October, 2013.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[22] *Id.* at 9.